**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
                                        :
RA'ED MOHAMAD IBRAHIM MATAR,  :          **05 Civ. 10270 (WHP)**
et al.,                                 :
              Plaintiffs,               :
                                        :
       -against-                        :
                                        :
                                        :
AVRAHAM DICHTER,                        :
                                        :
              Defendant.                :
-----------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

JUDITH BROWN CHOMSKY
MICHAEL POULSHOCK
LAW OFFICES OF JUDITH BROWN
CHOMSKY
P.O. Box 29726
Elkins Park, PA 19027
Tel:  (215) 782-8367
Fax:  (215) 782-8368

MARIA C. LAHOOD (ML-1438)
JENNIFER M. GREEN (JG-3169)
WILLIAM GOODMAN (WG-1241)
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6430
Fax:  (212) 614-6499

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................2

I.  MATTERS OUTSIDE THE PLEADINGS MAY ONLY BE CONSIDERED ON THE JURISDICTIONAL ISSUE, AND IF DEEMED NECESSARY, JURISDICTIONAL DISCOVERY SHOULD BE PERMITTED ....................................2

II.  THE FSIA DOES NOT PROVIDE DEFENDANT WITH IMMUNITY .........................3

    A.  The FSIA Does Not Apply to Individuals, as Shown by Its Plain Language, and as Reasoned by the Second Circuit .................................................................3

    B.  Even if the FSIA Is Deemed to Apply to Individuals, it Is Not Applicable Here Because Defendant Has Not Met His Burden to Show He Acted Outside the Scope of His Authority ............................................................................6

        1.  Defendant acted outside the scope of his authority under the law applicable in Gaza, which is international law .....................................................8

        2.  Defendant acted outside the scope of his authority even under Israeli law ...............................................................................................................8

        3.  Defendant acted outside the scope of his authority under international law norms ...................................................................................................9

III.  THE TVPA PROVIDES LIABILITY EVEN IF DEFENDANT'S CONDUCT WAS AUTHORIZED ....................................................................................................12

IV.  PLAINTIFFS' CLAIMS DO NOT IMPLICATE THE POLITICAL QUESTION DOCTRINE .....................................................................................................14

    A.  Under the ATS, Courts Have Routinely Adjudicated Claims Touching Upon Issues of Foreign Policy ..................................................................................15

    B.  Courts Have Adjudicated Claims Relating to Political and Military Decisions, the Middle East, and Other Sensitive Regions of the World .....................16

    C.  The Defendant Has Failed to Show that Any of the *Baker v. Carr* Factors Are Present...........................................................................................................19

        1.  There is a clear textual commitment of this issue to the judicial branch ............20

2.    There are judicially discoverable and manageable standards for resolving the issues in this case ................................................................20

3.    It is possible to decide this case without an initial policy determination of a kind clearly for nonjudicial discretion ..........................................21

4.    It is possible for the Court to independently resolve this case without coming into conflict with the other branches of government ..............................21

V.    THE ACT OF STATE DOCTRINE DOES NOT BAR PLAINTIFFS' CLAIMS ............22

A.  Defendant Has Not and Cannot Meet His Burden to Prove an Act of State ...............22

B.  Defendant Has Failed to Prove that the Validity of an Official "Act of State" Within Sovereign Territory Is at Issue ........................................................22

1.    The Act of State Doctrine does not apply because the act alleged occurred outside of Israel's sovereign territory .....................................23

2.    The Act of State Doctrine does not bar plaintiffs' claims because defendant failed to establish an "official" act of state ..........................25

3.    The Act of State Doctrine does not bar plaintiffs' claims because they do not require the Court to declare an official act invalid ...................27

C.  Even if an Act of State Were at Issue, the *Sabbatino* Factors Would Counsel Against Application of the Doctrine ..........................................................28

1.    There is a high degree of international consensus concerning applicable legal principles ..............................................................................28

2.    Any foreign relations implications are alleviated because the U.S. government has condemned the human rights violation at issue ........................29

D.  Defendant Need Not Have Ordered the Bombing to Be Held Liable ..........................30

CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

## Federal Cases

*Aktepe v. US*, 105 F.3d 1400 (11th Cir. 1997)...............................................................17

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) ..................22

*Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir. 1985)  23

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005).....................................16antolok

*Antolok v. United States,* 873 F.2d 369 (D.C. Cir. 1989) .............................................16

*Arellano v. Weinberger*, 745 F.2d 1500  (D.C. Cir. 1984........................................19

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989)..............11

*Baker v. Carr*, 369 U.S. 186 (1962)......................................................................*passim*

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964) ................................22, 23

*Barnhart v. Sigmon Coal, Co. Inc.*, 534 U.S. 438 (2002)............................................12

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000)...........................................22, 26

*Biton v. Palestinian Interim Self Gov't,* 310 F. Supp. 2d 172 (D.D.C. 2004) .............16

*Brocsonic Co. v. M/V "Mathilde Maersk"*, 120 F.Supp.2d 372 (S.D.N.Y. 2000) ........3

*Brown v. U.S.*, 12 U.S. 110 (1814) .............................................................................18

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................................................................................5

*Burnett v. Al Baraka Inv. & Dev. Corp. (In-re Terrorist Attacks)*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005)................................................................................................................5

*Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189 (S.D.N.Y. 1996) ...............................6, 7

*Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012 (2d Cir. 1993) .......................7

*Cayuga Indian Nation v. Cuomo*, 758 F. Supp. 107 (N.D.N.Y. 1991)........................24

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948)................................ 15

*Chuidian v. Philippine Nat. Bank,* 912 F.2d 1095 (9th Cir. 1990) ............................................ 2, 6

*Conley v. Gibson,* 355 U.S. 41 (1957) ........................................................................................ 2

*Cooper v. North Jersey Trust Co.,* 226 F. Supp. 972 (S.D.N.Y. 1964) ......................................... 5

*Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wash. 2005) ................................. 17, 24

*DaCosta v. Laird*, 471 F.2d 1146 (2d Cir. 1973)........................................................................ 18

*Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) .............................. 22

*Doe v. Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) ................................................... 13, 14, 17, 24

*Doe I v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004).................................................*passim*

*Doe v. Unocal Corp.,* 963 F. Supp. 880, 893 (C.D. Cal 1997)............................................ 26, 29

*Dover Ltd. v. A.B. Watley, Inc.,* No. 04 Civ. 7366 (FM), 2006 U.S. Dist. LEXIS 13621 (S.D.N.Y. Mar. 27, 2006) ....................................................................................................... 12

*El-Shifa Pharmaceutical Ind. Co. v. U.S.*, 402 F. Supp. 2d 267 (D.D.C. 2005).......................... 17

*Enahoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005) ................................................................. 5

*Ex Parte Peru,* 318 U.S. 578 *(1943)* ........................................................................................ 4

*F. Palicio y Compania, S. A. v. Brush*, 256 F. Supp. 481 (S.D.N.Y. 1966) ............................... 23

*Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980).......................................................... 20, 26

*Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24 (2d Cir.1988)... 3

*Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002) ...................................... 30

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ............................................................. 3

*Galu v. SwissAir*, 873 F.2d 650 (2d Cir. 1989)........................................................................ 25

*Greenery Rehabilitation Group, Inc. v. Sabol,* 841 F. Supp. 58 (N.D.N.Y.1993) ...................... 3

*Gualandi v. Adams,* 385 F.3d 236 (2d Cir. 2004)...................................................................... 3

*Gully v. National Credit Union Admin. Bd.*, 341 F.3d 155 (2d Cir. 2003) .................................. 13

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................................................. 18

*Harrison v. Potter,* 323 F. Supp. 2d 593 (S.D.N.Y. 2004) .................................................. 3

*Hartford Courant Co. v. Pellegrino,* 380 F.3d 83 (2d Cir. 2004) .......................................... 2

*Hatahley v. United States*, 351 U.S. 173 (1956) ......................................................... 12

*Hilao v. Estate of Marcos*, 25 F.3d 1467 (9th Cir. 1994) ........................................ 6, 7, 30

*Hirsch v. Israel*, 962 F. Supp. 377 (S.D.N.Y. 1997) ..................................................... 11

*Holtzman v. Schlesinger*, 484 F.2d 1307 (2d Cir. 1973) ................................................. 17

*Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005) ......................................... 19, 30

*In re "Agent Orange" Product Liability Litigation,* 373 F. Supp. 2d 7 (E.D.N.Y. 2005) .... *passim*

*In re Yamashita*, 327 U.S. 1 (1946) .................................................................... 30

*Jacobs v. Ramirez,* 400 F.3d 105 (2d Cir. 2005) ......................................................... 2

*Kadic v. Karadzic,* 70 F.3d 232 (2d Cir. 1995) .................................................... passim

*Kalmich v. Bruno*, 450 F. Supp. 227 (N.D. Ill. 1978) .................................................... 23

*Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006 (2d Cir. 1986) ........................................ 3

*Keller v. Nigerian Bank*, 277 F.3d 811 (6th Cir. 2003) .................................................. 6

*Klinghoffer v. S.N.C. Achille Lauro*, 739 F. Supp. 854 (S.D.N.Y. 1990) ............................. *passim*

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992) ................................................. 18

*Lafontant v. Aristide*, 844 F. Supp. 128 (E.D.N.Y. 1994) ............................................ 5, 13

*Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) ............................................... 16

*Linder v. Portocarrero,* 963 F.2d 332 (11th Cir. 1992) ............................................. 19, 26

*Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) ........................................... 25, 29

*National Coalition Gov't of Union of Burma* (*NCGUB*), 176 F.R.D. 329 (C.D. Cal. 1997) ....... 27

*New York Times Co. v. U.S.*, 403 U.S. 713 (1971) ...................................................... 18

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ........................................ 22

*Pipefitters Local Union No. 562 v. U.S.*, 407 U.S. 385 (1972)...................................................... 13

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289 (S.D.N.Y. 2003)

...................................................................................................................... *passim*

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 374 F.Supp.2d 331 (S.D.N.Y. 2005) . 10

*Rasul v. Bush*, 542 U.S. 466 (2004)............................................................................ 18

*Republic of Aus. v. Altmann*, 541 U.S. 677 (2004) ............................................................ 23

*Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)........................................ 21, 29

*Risk v. Kingdom of Norway*, 707 F. Supp. 1159 (N.D. Cal. 1989)................................................ 24

*Robinson v. Gov't of Malay*, 269 F.3d 133 (2d Cir. 2001)............................................................ 7

*Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073 (C.D. Cal. 1999) ...................................................... 27

*Saltany v. Reagan*, 702 F. Supp. 319 (D.D.C. 1988) ...................................................................... 27

*Sarei v. Rio Tinto Plc,* 221 F. Supp. 2d 1116 (C.D. Cal. 2002)...................................................... 26

*Sharon v. Time*, 599 F. Supp. 538 (S.D.N.Y. 1984) ............................................................ *passim*

*Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F. 3d 239 (2d Cir. 1996).................... 11

*Sosa v. Alvarez-Machain,* 542 U.S. 692 (2004)............................................................ *passim*

*State of the Netherlands v. Federal Reserve Bank*, 99 F. Supp. 655 (S.D.N.Y. 1951)............. 8, 23

*Stroganoff v. Weldon*, 420 F. Supp. 18 (S.D.N.Y. 1976)............................................................ 23

*Tachiona v. U.S.*, 386 F.3d 205 (2d Cir. 2004)........................................................................ 4, 5

*Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) ............................................ 20

*The Paquete Habana,* 175 U.S. 677 (1900)................................................................ 11, 18

*Todd v. Panjaitan*, No. 92-12255, 1994 WL 827111 (D. Mass. Oct. 26, 1994)........................... 19

*Trajano v. Marcos*, 978 F.2d 493 (9th Cir. 1992)................................................................ 6, 11

*U.S. v. American Trucking Ass'ns*, 310 U.S. 534 (1940) ...................................................... 12

*U.S. v. Giffen*, 326 F. Supp. 2d 497 (S.D.N.Y. 2004) ..................................................... 23, 25

*U.S. v. Giffen,* 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ........................................................ 12

*U.S. v. Mohammed*, 27 F.3d 815 (2d Cir. 1994) .................................................................. 13

*Underhill v. Hernandez,* 168 U.S. 250 (1897) .................................................................... 22

*Ungar v. Palestinian Liberation Org.*, 402 F. 3d 274 (1st Cir. 2005) ................................ 16

*Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230 (2d Cir. 2002) ....................... 7

*W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400 (1990).. 23, 27, 28

*Wei Ye v. Jiang Zemin,* 383 F.3d 620 (7th Cir. 2004)........................................................... 4

*Wiwa v. Royal Dutch Petroleum*, 226 F.3d 88 (2d Cir. 2000)............................................ 20

*Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995)............................................... 6, 7, 19

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ......................................... 18

## Federal Statutes and Legislative History

Alien Tort Statute (ATS) (28 U.S.C. § 1350) ...................................................... *passim*

Foreign Sovereign Immunities Act (FSIA) (28 U.S.C. §§ 1602-11)................................... *passim*

H.R. Rep. No. 1487, 94th Cong., 2nd Sess. (1976) .......................................................... 4, 5

S. Rep. No. 249, 102nd Cong., (1st Sess. 1991).......................................................... 13, 27, 30

Torture Victim Protection Act (TVPA) (28 U.S.C. § 1350 note)........................................ *passim*

## Restatements

Restatement (Second) of Foreign Relations Law § 41 (1962).................................................... 26

Restatement (Third) of the Foreign Relations Law of the United States § 102 cmt. k, § 451 *et seq.* (1987) .............................................................................................................. 4, 10


## Foreign and International Cases

*Aita v. Regional Commander of Judea and Samaria*, HCJ 69/81 (High Ct. 1983) (Israel) ........... 9

International Military Tribunal (Nuremberg), Judgment and Sentences (1946) ......................... 11

*Mara'abe v. The Prime Minister of Israel,* HCJ 7957/04 (High Ct. 2005) (Israel) ...................... 9

*Physicians for Human Rights, et al., v. Commander of the IDF Forces in the Gaza Strip*, HCJ 4764/04 (High Ct. 2004) (Israel) ............................................................................................ 9

*The Beit Sourik Case*, HCJ 2056/04 (High Ct.2004) (Israel) ........................................................ 9

*Yassin v. Commander of Kziot Military Camp*, HCJ 5591/02 (High Ct. 2002) (Israel) ............... 9


## International Documents

*Legal Consequences of the Construction of a Wall in the Occupied Palestinian Territory*, Advisory Opinion, I.C.J. Reports 2004 ...................................................................................... 8

*Second Period Report of Israel,* U.N. GAOR Hum Rts. Comm, 78th Sess., 2116th-2118[th] mtgs., U.N. Doc. CCPR/C/ISR/2001/2 (2001) ................................................................................ 24

## INTRODUCTION

This class action is brought on behalf of eight children and seven adults who were killed and over 150 who were injured when a one-ton bomb was intentionally dropped onto a residential apartment building near midnight in one of the most densely populated residential neighborhoods in the world.  The children who were killed were ages 2 months, 1½ years, 3 years, 4½ years, 5 years, 5½ years, 10 years, and 15 years old.  The bomb completely destroyed 8 nearby apartment buildings and partially destroyed or seriously damaged 30 more.  The intentional bombing of civilian homes is a violation of the law of nations and a war crime.

The fact that this incident occurred in the Middle East and the fact that Defendant is a former head of Israel's security agency may generate strong emotions but it does not create a "political question."  The fact that, at other times and in other places, Israelis suffer death and injury does not justify the intentional murder of Palestinian civilians.  The issues of responsibility for personal injuries, even in an international context, are "constitutionally committed" to the courts.  Despite Defendant Dichter's repeated assertions to the contrary, he is not the government of Israel, and is not entitled to a presumption of immunity.

Putting aside rhetorical flourishes, Defendant's Motion raises three core issues, which Plaintiffs address as follows: First, the Foreign Sovereign Immunities Act (FSIA) (28 U.S.C. §§ 1602-11) does not apply to individuals.  If construed to include individuals, the FSIA does not apply to those acting outside the scope of their authority under the applicable domestic law or international law, and does not preclude claims against officials for war crimes, crimes against humanity, extrajudicial killing, and cruel, inhuman, or degrading treatment or punishment.  The Torture Victim Protection Act (TVPA) (28 U.S.C. § 1350 note) provides liability for extrajudicial killing even if Defendant's conduct was authorized.  Second, this suit is not barred

by the political question doctrine because the issue of liability raised here is committed, by constitution and statute, to the courts, and are otherwise justiciable.  Third, the suit is not barred by the act of state doctrine because Defendant failed to prove that the act occurred within Israel's sovereign territory and that it was an official act authorized by Israeli law.

**ARGUMENT**

**I.      MATTERS OUTSIDE THE PLEADINGS MAY ONLY BE CONSIDERED ON THE JURISDICTIONAL ISSUE, AND IF DEEMED NECESSARY, JURISDICTIONAL DISCOVERY SHOULD BE PERMITTED.**

Defendant moves to dismiss under Rule12(b)(1) based on jurisdictional immunity and Rule 12(b)(6) under the political question and act of state doctrines, which are nonjurisdictional, prudential doctrines.[1] *See, e.g., Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995).[2]  For purposes of a motion to dismiss under Rule 12(b)(6), the well-pleaded factual allegations of the complaint are accepted as true, and all inferences are drawn in favor of the plaintiffs. *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 89-90 (2d Cir. 2004).  Dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *accord Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir. 2005).

In support of his motion to dismiss under the political question and act of state doctrines, Defendant makes repeated references to evidence outside the complaint.  (*See* Memo. at 20-25,

---

[1]   Defendant mischaracterizes the political question and act of state doctrines as jurisdictional grounds for dismissal, Defendant's Memorandum of Law ("Memo.") at 6, and fails to properly notice them as 12(b)(6) issues. (Defendant's Notice of Motion, at 1.)

[2]   In a footnote, Defendant argues this case should be dismissed under Rule 12(b)(3) for improper venue under 28 U.S.C. § 1391(f)(4). (Memo. at 13, n.9.)  An argument raised solely in a footnote is improper and should not be considered. *See, e.g., United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir. 1993); *Associated Press v. U.S. Department of Defense*, 410 F.Supp.2d 147, 153 (S.D.N.Y. 2006).  Defendant's argument also fails because § 1391(f)(4) pertains to foreign states or their foreign subdivisions and is therefore inapplicable; even if the FSIA does apply to individuals, they are considered an "agency or instrumentality." *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1101 (9th Cir. 1990).

and table of authorities v-vi.) "'[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (quoting *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)).  Simultaneous with the filing of this Memorandum, Plaintiffs submit Objections to the extrinsic materials and to those sections which make reference to them.  These materials and the references should be stricken.

In reviewing a motion to dismiss under Rule 12(b)(1), a court may consider materials beyond the pleadings, including affidavits, exhibits, and discovery materials, to determine if subject matter jurisdiction exists.  *Harrison v. Potter,* 323 F. Supp. 2d 593, 598 (S.D.N.Y. 2004). The court may also permit "limited discovery with respect to the jurisdictional issue." *Brocsonic Co. v. M/V "Mathilde Maersk"*, 120 F.Supp.2d 372, 375 (S.D.N.Y. 2000).  This is especially true, as here, "'where the facts are peculiarly within the knowledge of the opposing party.'" *Greenery Rehabilitation Group, Inc. v. Sabol,* 841 F. Supp. 58, 62 (N.D.N.Y. 1993) (quoting *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)).  *See also Gualandi v. Adams,* 385 F.3d 236, 244 (2d Cir. 2004).

Plaintiffs should be afforded the opportunity to take limited discovery of issues of fact raised under Rule 12(b)(1), including evidence of  the factual and legal authority on which Defendant relies to support his claim that he was acting within the scope of his authority.

## II.     THE FSIA DOES NOT PROVIDE DEFENDANT WITH IMMUNITY.

### A.   The FSIA Does Not Apply to Individuals, as Shown by Its Plain Language, and as Reasoned by the Second Circuit.

The FSIA does not extend sovereign immunity to individuals according to its statutory

language and legislative history, and as signaled by the Second Circuit.  In *Tachiona v. U.S.*, 386

F.3d 205 (2d Cir. 2004), *petition for cert. filed*, 74 USLW 3425, No. 05-879 (Jan 12, 2006), the

Second Circuit concluded that the FSIA was not intended to reach natural persons, but only

"foreign states, which are defined as including 'political subdivision[s],' and 'agencies or

instrumentalities'" 386 F.3d at 220-21 (citing *Ex Parte Peru*, 318 U.S. 578 (1943); *Wei Ye v.*

*Jiang Zemin*, 383 F.3d 620, (7th Cir. 2004)):

> '[A]genc[ies] [and] instrumentalit[ies]' in turn are defined in terms not usually
> used to describe natural persons.  *See,* 28 U.S.C. § 1603(b) (defining 'agency or
> instrumentality' as an 'entity' that, *inter alia,* is 'an organ of a foreign state or
> political subdivision thereof, or a majority of whose shares or other ownership
> interest is owned by a foreign state or political subdivision thereof,' 28 U.S.C. §
> 1603(b)(2)) ... Moreover, the only references to heads of state or other foreign
> officials in the FSIA's legislative history suggest that their immunity is not
> governed by the Act.  *See* H.R.Rep. No. 94-1487, at 21 (1976), *reprinted in* 1976
> U.S.C.C.A.N. 6604, 6620 (describing bill that would later become the FSIA as
> 'deal[ing] only with the immunity of foreign states and not its diplomatic or
> consular representatives')...

*Tachiona*, 386 F.3d at 220-21 (brackets in original).

Consistent with this view of the FSIA, the Restatement (Third) of the Foreign Relations

Law of the United States §§ 451 *et seq.* (1987), the first edition issued after the FSIA's adoption,

eliminated individuals acting in their official capacity from the list of parties entitled to sovereign

immunity.[3]  The best evidence of the meaning of the statute, however, are the words chosen by

Congress.  The words "agency" and "instrumentality" are not normally used to designate natural

persons.  If Congress intended to include natural persons, it had the ability to do so.  Even if it

were determined that the language of the FSIA is ambiguous, the legislative history compels the

same conclusion.  That history explains the terms "agency or instrumentality" by listing such

entities as state trading companies, mining enterprises, airlines, steel companies, central banks,

---

[3]   *See* Joan Fitzpatrick, *The Claim To Foreign Sovereign Immunity By Individuals Sued For
International Human Rights Violations*, 15 Whittier L. Rev. 465, 466 (1994).

export associations, government procurement agencies, and ministries. H.R. Rep. No. 94-1487 (2nd Sess. 1976), reprinted in 1976 U.S.S.C.A.N. 6604, 6614.  Similarly, *Lafontant v. Aristide*, cited by Defendant, found that the FSIA was not designed to apply to diplomatic or other consular officials but was "crafted primarily to allow state-owned companies" to be sued.  844 F. Supp. 128, 137 (E.D.N.Y. 1994).  Thus Congress did not intend to include natural persons within the meaning of "agency" or "instrumentalities" under the FSIA.

There is a conflict among the circuits, but the Supreme Court has not yet ruled on whether the FSIA is applicable to individual defendants.  The Seventh Circuit, in *Enahoro v. Abubakar*, followed the reasoning suggested in *Tachiona* and rejected the application of FSIA to foreign officials, even those who act within the scope of their authority. 408 F.3d 877, 882 (7th Cir. 2005) (Nigerian general not immune under FSIA); *see also, Ye*, 383 F.3d at 620.  *Enahoro* examined the language of §1603 and also that it did not include individuals. 408 F.2d at 881. The court also rejected the reasoning that because the FSIA doesn't expressly exclude individuals, they must be included, finding it illogical and contrary to the burden of proof under the FSIA, which ultimately rests with the foreign state. *Id*. at 882.

Defendant cites (and Plaintiffs find) only one district court case in this Circuit that has applied the FSIA to individuals *since* the Second Court expressed its view in *Tachiona* that the FSIA does not apply to individuals.  In so finding, the court in *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) and 392 F. Supp. 2d 539 (S.D.N.Y. 2005) did not even cite *Tachiona* or acknowledge the split in authority on the issue. This Court should follow the persuasive reasoning of *Tachiona* and conclude that the FSIA was not meant to extend to individual officials, even when they act within the scope of their authority. *See, e.g., Cooper v. North Jersey Trust Co.,* 226 F. Supp. 972, 981 (S.D.N.Y. 1964)

(following Second Circuit dictum because "it indicates the feeling of the Circuit Court, and it conforms with the interests of justice").

   **B.  Even if the FSIA Is Deemed to Apply to Individuals, it Is Not Applicable Here Because Defendant Has Not Met His Burden to Show He Acted Within the Scope of His Authority.**

   Courts that have held that the FSIA immunizes individuals have required that the individuals' actions fall within the scope of their lawful authority.[4]  *Chuidian v. Philippine Nat. Bank,* limited the FSIA's application to acts by officials within the scope of their authority and consistent with their legal mandate.  912 F.2d 1095, 1101-03 (9th Cir. 1990).  Thus, where officials engage in acts beyond the scope of their authority, the FSIA would not apply.  In *Hilao v. Estate of Marcos*, the court determined that the acts of former Philippine president Marcos were not immunized by the FSIA because they "were not taken within any official mandate."  25 F.3d 1467, 1470 (9th Cir. 1994).  The court concluded that "the illegal acts of a dictator are not 'official acts' unreviewable by federal courts." *Id.* at 1471. *See also, Trajano v. Marcos*, 978 F.2d 493, 496-77 (9th Cir. 1992); *Xuncax v. Gramajo*, 886 F. Supp. 162, 175-76 (D. Mass. 1995); *Keller v. Nigerian Bank*, 277 F.3d 811, 815 (6th Cir. 2003); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1197 (S.D.N.Y. 1996).

   In *Cabiri*, the court found that the FSIA does not apply to a foreign government official alleged to have committed torture, as torture could not fall with the scope of his authority, nor be permitted by domestic law, since no government asserts a right to torture.  921 F. Supp. at 1198. In *Doe I v. Liu Qi*, Chinese government officials were found not to be immune under the FSIA because the alleged conduct – torture – was inconsistent with Chinese law.  349 F. Supp. 2d 1258

---

[4] *See e.g., Chuidian*, 912 F.2d at 1101-03; *Velasco v. Government of Indonesia*, 370 F.3d 392, 398-99 (4th Cir. 2004); *Byrd v. Corporacion Forestal y Industrial de Olancho S.A.,* 182 F.3d 380, 388 (5th Cir. 1999); *Keller*, 277 F.3d at 815; *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 671 (D.C. Cir. 1996).

(N.D. Cal. 2004). An officer's actions beyond the limitations of state law are to be considered individual and not sovereign actions; the officer is not empowered by the sovereign to commit those acts. *Qi* explicitly addressed the issue of whether a government could authorize conduct which was contrary to its own law. *Qi* concluded that *ultra vires* actions are not subject to sovereign immunity and that only acts within the official's legal grant of authority can be immunized. *Id.* at 1287. Thus, even if the defendant had provided competent evidence that he was authorized or directed to commit the alleged violations of the law of nations, his burden would not be met. Defendant must show that he had *legal* authority. Although *Qi* looked to domestic law to determine whether the official acted within the scope of his authority, *id*. at 1283, other courts have looked to both domestic and international law, finding that officials *cannot* be authorized to commit *jus cogens* violations. *See, e.g., Hilao,* 25 F.3d at 1472; *Cabiri,* 921 F. Supp. at 1198; *Xuncax,* 886 F. Supp. at 176. Here, the issue must be determined by international law, especially given that the act did not take place within Israel's territory, subject to its laws, but in occupied territory, subject to international law. (Cassese Dec. at ¶¶ 3-7.)

Defendant does not present evidence or even argue that the action alleged was lawfully within the scope of his authority, despite bearing the initial burden of establishing a prima facie case that he satisfies the FSIA's definition of a foreign state. *See Virtual Countries, Inc. v. Republic of S. Afr.*, 300 F.3d 230, 241 (2d Cir. 2002); *Robinson v. Gov't of Malay*, 269 F.3d 133, 140 (2d Cir. 2001). Only then would the burden shift to Plaintiffs to produce evidence that he is not entitled to immunity. *Virtual Countries*, 300 F.3d at 241. However, Defendant would still have the ultimate burden of proving by a preponderance of the evidence that he is a foreign sovereign. *Id.*; *Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1016 (2d Cir. 1993).

Defendant takes the absolute position that sovereign immunity extends to government

officials acting at the behest of their governments without regard to whether the conduct is lawful under either international or domestic law. (Memo. at 7.)  Defendant never even argues (much less provides evidence) that the attack was legal under Israeli law or international law, nor can he meet his burden to do so.  If, as alleged, Defendant violated the norms against extrajudicial killing, war crimes,[5] crimes against humanity, and cruel inhuman and degrading treatment, he is not protected by immunity which extends only to officials acting within the scope of their lawful authority.

**1. Defendant acted outside the scope of his authority under the law applicable in Gaza, which is international law.**

The bombing at issue occurred in the Occupied Palestinian Territory (OPT), in Gaza, a territory which was indisputably occupied by Israel, and therefore Defendant's conduct must be judged in light of the law operable in Gaza: international law. (Cassese Dec. at ¶¶ 3-7.) *See also*, *Legal Consequences of the Construction of a Wall in the Occupied Palestinian Territory*, Advisory Opinion, I.C.J. Reports 2004, paras. 86-113 (available at http://www.icj-cij.org/icjwww/idocket/imwp/imwpframe.htm).  "Military occupation by a belligerent enemy does not transfer sovereignty over the occupied territory to that enemy." *State of the Netherlands v. Federal Reserve Bank*, 99 F. Supp. 655, 660 (S.D.N.Y. 1951), *aff'd in part, rev'd in part on other grounds*, 201 F. 2d 455 (2d Cir. 1953).  Under the applicable principles of international law, the alleged conduct was unlawful and therefore beyond the scope of Defendant's authority. Cassese Dec. at ¶¶ 8-30.

**2. Defendant acted outside the scope of his authority even under Israeli law.**

Applying the laws of Israel would reach the same conclusion.  Under Israeli law,

---

[5] The term "war crimes" encompasses serious violations of the laws of war, or international humanitarian law.  *See, e.g., Kadic*, 70 F.3d at 242-243; Beth Stephens & Michael Ratner, International Human Rights Litigation in U.S. Courts 71-73 (1996).

customary international law (CIL) constrains the conduct of Israeli officials.  As the Israeli High

Court of Justice (HCJ) held: "Indeed, every Israeli soldier carries in his pack the rules of

customary public international law regarding the law of war, and the fundamental rules of Israeli

administrative law."[6]  Israel's incorporation of CIL into Israeli law is automatic, unless CIL

conflicts with an existing domestic statute; if there is a conflict, statutes are to be read, whenever

possible, as consistent with international law.[7]  Defendant presents no evidence that any such

conflicting statute exists.  Israel also observes the humanitarian portions of the Fourth Geneva

Convention.[8]

Defendant violated standards of conduct imposed by CIL and these specific instruments.

Specifically, as explained by the HCJ, Israeli military personnel are under an affirmative duty,

based on the Fourth Geneva Convention, to protect civilians from harm.[9]  The intentional

bombing of a civilian apartment building in a crowded neighborhood is a clear violation of

customary international law and hence Israeli law.  As such, Defendant acted outside the scope

of his lawful authority and is not immune.

### 3.   Defendant acted outside the scope of his authority under international law norms.

---

[6] *Mara'abe v. The Prime Minister of Israel,* HCJ 7957/04, para. 14 (High Ct. 2005) (Israel) (available at http://elyon1.court.gov.il/files_eng/04/570/079/a14/04079570.a14.pdf).
[7] *Aita v. Regional Commander of Judea and Samaria*, HCJ 69/81, para. 12 (High Ct. 1983) (Israel) (available at http://elyon1.court.gov.il/files_eng/81/690/000/z01/81000690.z01.pdf).
[8] *Mara'abe*, CJ 2506/04, para. 57; *The Beit Sourik Case*, HCJ 2056/04, paras. 23-24 (High Ct.2004) (Israel) (available at http://elyon1.court.gov.il/files_eng/04/560/020/a28/ 04020560.a28.pdf); *Yassin v. Commander of Kziot Military Camp*, HCJ 5591/02, para. 12 (High Ct. 2002) (Israel) (available at http://elyon1.court.gov.il/files_eng/02/910/055/ a03/02055910.a03.pdf) (Fourth Convention applies).
[9] *Physicians for Human Rights, et al., v. Commander of the IDF Forces in the Gaza Strip*, HCJ 4764/04 paras. 19-22, 58, 66-68 (High Ct. 2004) (Israel) (available at http://elyon1.court.gov.il/files_eng/04/640/047/a03/ 04047640.a03.pdf).; *accord, In re Yamashita*, 327 U.S. 1, 16 (1946) (commander had "an affirmative duty to take such measures as were within his power and appropriate in the circumstances to protect prisoners of war and the civilian population").

International law applies constrains Defendant's actions regardless.  Since Nuremberg, it has been clear that foreign officials can be called to account for violations of the law of nations. *The Nuremberg Trial 1946*, 6 F.R.D. 69, 110 (1946, 1947) ("The principle of international law, which under certain circumstances, protects the representatives of a state, cannot be applied to acts which are condemned as criminal by international law.  The authors of these acts cannot shelter themselves behind their official position in order to be freed from punishment in appropriate proceedings.")

The controlling status of certain international laws was described in *In re "Agent Orange" Product Liability Litigation,* 373 F. Supp. 2d 7, 131 (E.D.N.Y. 2005).  "A peremptory [*jus cogens*] norm, which by definition permits no derogation, prevails over and invalidates any prior conflicting international agreements or other rules of international law, and 'can be modified only by a subsequent norm of general international law having the same character.'" *Id.*, citing the Vienna Convention on the Law of Treaties, May 23, 1969, art. 53, 1155 U.N.T.S. 331, 344 (entered into force Jan. 27, 1980); Restatement (Third) of the Foreign Relations Law of the United States § 102 cmt. k.  Because the conduct alleged violates *jus cogens* norms,[10] Israel could not authorize the acts alleged.[11]

With regard to Defendant's assertion that the FSIA immunizes officials acting at the behest of their governments who violate international human rights law, he erroneously cites

---

[10] Assuming that any one of these norms is "customary" but not *jus cogens*, it could be modified within a state by subsequent legislation or a treaty. *Agent Orange*, 373 F. Supp. at 131. However, Israel has not abrogated the norm against extrajudicial killings, war crimes, crimes against humanity, or cruel inhuman and degrading treatment, and applies customary international law. *See supra,* sec. II.B.2.

[11] *See, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 345 (S.D.N.Y. 2003) (war crimes and extrajudicial killing are *jus cogens* violations); *Presbyterian Church,* 374 F. Supp. 2d 331, n.2 (S.D.N.Y. 2005) (extrajudicial killing); *see also Mehinovic v. Vukovic,* 198 F.Supp.2d 1322, 1351-52 (N.D. Ga. 2002) (grave breaches include willful killing, torture or inhuman treatment, and willfully causing great suffering).

cases involving immunity available to the state itself. (Memo. at 7); *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F. 3d 239, 245 (2d Cir. 1996) (Libya); *Hirsch v. Israel*, 962 F. Supp. 377 (S.D.N.Y. 1997) (Israel and Germany).  Another case cited by Defendant, *Trajano v. Marcos*, found that the individual defendant admitted that she had acted without official authority. (Memo. at 7); *Trajano*, 978 F.2d at 498.  None addresses the issue raised by Defendant's claim that he, as a former government official, is immune under U.S. law without regard to prohibitions of international law.  To the contrary, "[i]nternational law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination." *The Paquete Habana,* 175 U.S. 677, 700 (1900).

This position is bolstered by the Supreme Court's determination that the "Alien Tort Statute by its terms does not distinguish among classes of defendants, and it of course has the same effect after the passage of the FSIA as before *with respect to defendants other than foreign states*." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 438 (1989) (emphasis added) (deciding that jurisdiction over a foreign state must be under the FSIA).  The Alien Tort Statute (ATS) (28 U.S.C. § 1350) provides jurisdiction for claims of violations of international law norms with no less definite content and acceptance among civilized nations than when it was enacted. *Sosa v. Alvarez-Machain,* 542 U.S. 692, 731-32 (2004).  International law did not and does not extend immunity to government officials who violate the law of nations.  Indeed, the sovereign immunity defense raised by Nazi war criminals at the Nuremberg trials was rejected.  International Military Tribunal (Nuremberg), Judgment and Sentences (1946), *reprinted in 41 Am. J. Int'l L. 172, 221* (1947). ("The principle of international law, which under certain circumstances, protects the representatives of a state, cannot be applied to

11

acts which are condemned as criminal by international law").  Following *Amerada Hess*, an official, even one acting within the scope of his authority, is no more entitled to immunity for violations of the law of nations than those tried at Nuremberg.

### III.    THE TVPA PROVIDES LIABILITY EVEN IF DEFENDANT'S CONDUCT WAS AUTHORIZED.

The FSIA does not preclude Plaintiffs' claims pursuant to the TVPA, the unambiguous language of which provides for liability where an "individual who, under **actual** or apparent authority or color of law, of any foreign nation...subjects an individual to extrajudicial killing...." 28 U.S.C. § 1350 note, sec. 2(a)(2) (emphasis added).  The term "actual authority" has well-established meaning (*see, e.g., Hatahley v. United States*, 351 U.S. 173, 180-181 (1956)) and "arises from a manifestation of consent from principal to agent." *Dover Ltd. v. A.B. Watley, Inc.,* No. 04 Civ. 7366 (FM), 2006 U.S. Dist. LEXIS 13621, at *22 (S.D.N.Y. Mar. 27, 2006) (internal quotations omitted).  As this Court noted in the public law context, actual authority to do an act must come from "a government official empowered to authorize" the act.  *U.S. v. Giffen,* 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004).  In this context even if Defendant were to provide evidence that he was "authorized" to participate in an "extrajudicial killing," (i.e., had "actual" authority) he would not be immune under the TVPA.

Despite the explicit language of the TVPA, Defendant argues that officials of foreign governments are immune from liability if they are acting in their official capacities. Memo. at 8. Under Defendant's interpretation, an individual acting under "actual" authority would be immune unless he was acting beyond the scope of his authority.  This absurd result is clearly contrary to the statutory language. "Where, as here, the statutory language is unambiguous, the inquiry ceases." *Barnhart v. Sigmon Coal, Co. Inc.*, 534 U.S. 438, 439 (2002); *see also*, *U.S. v. American Trucking Ass'ns*, 310 U.S. 534, 543 (1940).

Against the explicit language of the TVPA, Defendant relies on the FSIA, which makes no reference to the extension of sovereign immunity to officials.  It is well settled that, when general and specific statutes conflict, the specific statute prevails. *U.S. v. Mohammed*, 27 F.3d 815, 817 (2d Cir. 1994).  Here, the TVPA specifically provides that those with actual authority (*i.e.*, officials acting within the scope of their authority) can be sued, whereas the FSIA does not specifically exclude officials (that meaning has been read into an "agency or instrumentality of a foreign state.").  On that basis alone, Defendant's argument that inferences drawn from the FSIA negate the clear language of the TVPA must be rejected.  Further, the TVPA is the later of the two statutes, and therefore should take precedence. *Id.*

Defendant's reliance on the legislative history to contradict the unambiguous statutory language is misplaced. *Gully v. National Credit Union Admin. Bd.*, 341 F.3d 155, 166 (2d Cir. 2003) ("Given the plain, unambiguous language of the text, it is well settled that we cannot resort to legislative history to glean a statute's meaning").  "If the language of a statute is clear and unambiguous there is no occasion to resort to legislative history.  Nor can such history, however illuminating it may seem, be relied upon to contradict, or dilute, or add unspecified conditions to statutory language which is perfectly clear." *Pipefitters Local Union No. 562 v. U.S.*, 407 U.S. 385, 466 (1972).  Even if it were necessary to look to the legislative history, it confirms that "the phrase 'actual or apparent authority or under color of law' is used to denote torture and extrajudicial killings committed by officials both within and outside the scope of their authority." S. Rep. No. 102-249, at 7 (1991).

Notably, only two cases Defendant cites involve claims under the TVPA. *Lafontant v. Aristide* held that the TVPA did not override head-of-state or diplomatic immunity, but did not apply FSIA immunity to a claim under the TVPA. 844 F. Supp. at 138.  *Doe v. Israel* involved

claims under the ATS and the TVPA against Israel, its agencies, Prime Minister Sharon and other officials in their "official" and "individual" capacities, but it contained no distinct analysis of the applicability of immunity to officials for claims under the TVPA. 400 F. Supp. 2d 86 (D.D.C. 2005). *Doe v. Israel* relied on an interpretation of the FSIA that applies it to individuals, which as discussed *supra* at II.A., has not been adopted in the Second Circuit.  By mandating liability for those who act under actual authority or color of "foreign law," the TVPA clearly reaches foreign officials acting within the scope of their authority.

## IV.    PLAINTIFFS' CLAIMS DO NOT IMPLICATE THE POLITICAL QUESTION DOCTRINE.

As the Supreme Court made clear in *Baker v. Carr*: "[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."  369 U.S. 186, 211 (1962).   Nonetheless, Defendant argues that the controversial nature of the Israeli-Palestinian conflict renders the issues in this case political questions.  However controversial that conflict may be, the bombing of the Al-Daraj neighborhood has been repeatedly condemned by the United States and has resulted in an apology from the State of Israel. (Complaint at ¶ 3.) Defendant attempts to provide "evidence" to the contrary, which is inadmissible and impermissible on a Rule 12(b)(6) motion.  If the Court is inclined to convert Defendant's motion to a Rule 56 motion, Plaintiffs could provide evidence to controvert theirs.  For example, the U.S. State Department found that the Israeli security forces' bombing of the "densely populated" Al-Daraj neighborhood "put large numbers of civilian lives in jeopardy…where civilian casualties were likely" and that Israel had used "imprecise, heavy weaponry in operations [in such attacks]…*in contravention of their own rules of engagement*" (emphasis added).[12]

This case is about Defendant's liability for participating in the decision to drop that

_____

[12] 2002 State Department Country Report on Human Rights Practices in Israel and the Occupied Territories, available at http://www.state.gov/g/drl/rls/hrrpt/2002/18278.htm.

bomb. Through the ATS and the TVPA, Congress committed such matters to the judiciary. An examination of the factors established in *Baker* makes evident that Defendant cannot meet his burden of establishing that the claims against him are precluded by the political question doctrine. 369 U.S. at 217.

**A.    Under the ATS, Courts Have Routinely Adjudicated Claims Touching Upon Issues of Foreign Policy.**

Defendant cites no authority for his argument that the political question doctrine has "particular force" in the area of foreign policy. As described below, numerous cases touching various aspects of U.S. foreign affairs have held to the contrary. *See*, *Kadic*, 70 F.3d at 249 ("[J]udges should not reflexively invoke doctrines to avoid difficult and somewhat sensitive decisions in [the] context of human rights."). There is a difference between issues of foreign policy and decisions courts are highly competent to make regarding liability for violations of law. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro*, 739 F. Supp. 854, 860 (S.D.N.Y. 1990).

As clearly stated by the U.S. Government in the landmark *Filártiga* case, "there is little danger that judicial enforcement will impair our foreign policy efforts" given that "courts are properly confined to determining whether an individual has suffered a denial of rights guaranteed him as an individual by customary international law".[13] The Government stressed that, "to the contrary, a refusal to recognize a private cause of action in these circumstances might seriously damage the credibility of our nation's commitment to the protection of human rights." *Id.*

*Sosa* explicitly limited ATS jurisdiction to universally accepted norms in part to avoid risks of adverse foreign policy consequences. 542 U.S. at 728. Defendant's reliance on *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948), is misplaced. (Memo. at 14.)

---

[13] Memorandum for the United States Submitted to the Court of Appeals for the Second Circuit in *Filártiga v. Peña-Irala*, 19 I.L.M. 585, 602-04, reprinted in 12 Hastings Int'l & Comp. L. Rev. 34, 45-46 (1988) (footnote omitted).

That case, dealing with airline routes, related to the inappropriateness of judicial review of orders by the U.S. president based upon classified intelligence, not to violations of the law of nations.

In short, a "politically charged" context does not transform claims into political questions. *See Kadic*, 70 F.3d at 249; *Alperin v. Vatican Bank*, 410 F.3d 532, 542, n.6 (9th Cir. 2005) (the "potential overtones that this case may have on relations with the [state] leadership do not…warrant dismissal") (citing *Antolok v. United States,* 873 F.2d 369, 392 (D.C. Cir. 1989) (Wald, C.J., concurring in judgment) ("focus should be on the particular issue presented" not "the ancillary effects…on political actors")).

### B.    Courts Have Adjudicated Claims Relating to Political and Military Decisions, the Middle East, and Other Sensitive Regions of the World.

Courts have recognized the justiciability of human rights claims for incidents occurring in the context of the Israel-Palestinian conflict.  The Second Circuit in *Klinghoffer* conceded that its decision relating to the PLO attack on a passenger vessel would "surely exacerbate the controversy surrounding the PLO's activities," but rejected defendant's claim that, because the case raised foreign policy questions in a volatile context, it was non-justiciable.  937 F.2d at 49 ("The fact that the issues before us arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question.").  *See also, Sharon v. Time*, 599 F. Supp. 538, 552 (S.D.N.Y. 1984) (libel suit regarding Sharon's role in the massacre of Palestinians was justiciable, even though the litigation touched upon "sensitive foreign affairs concerns"); *Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) (allowing claims by terror victims in Israel against bank used by Hamas); *Biton v. Palestinian Interim Self Gov't,* 310 F. Supp. 2d 172, 184 (D.D.C. 2004) ("Although the backdrop for this case - *i.e.*, the Israeli-Palestinian conflict - is extremely politicized, this circumstance alone is insufficient to make the plaintiffs' claims nonjusticiable"); *Ungar v. Palestinian Liberation Org.*, 402 F. 3d 274, 280 (1st

16

Cir. 2005), found no political question problem where the family of a U.S. citizen killed in Israel

sued the Palestinian Authority:

> The reality is that, in these tempestuous times, any decision of a United States
> court on matters relating to the Israeli-Palestinian conflict will engender strong
> feelings.  Be that as it may, the capacity to stir emotions is not enough to render
> an issue nonjusticiable.  For jurisdictional purposes, courts must be careful to
> distinguish between political questions and cases having political overtones.

Defendant relies heavily on *Doe v. Israel* (Memo. at 15-16) which held the case non-

justiciable on political question grounds where Plaintiffs sought damages, injunctive relief, and a

declaration that Israel's "self-defense policies are tantamount to terrorism." 400 F. Supp. 2d at

112.  In contrast, Plaintiffs here ask this Court to determine liability of a single former official

for an act which has been condemned by the U.S. (Complaint ¶ 3) and, as shown above, is

contrary to Israeli as well as international law.  Defendant also cites *Corrie v. Caterpillar, Inc.*,

403 F. Supp. 2d 1019 (W.D. Wash. 2005), *appeal docketed*, No. 05-36210 (9th Cir. Dec. 21,

2005), which found a political question because the court was asked to enjoin the sale of

bulldozers to a foreign country where the political branches had refused to impose a ban.  This

case does not seek injunctive relief, nor relief contrary to any political branch decision.

Defendant next argues that courts have "avoided entanglement" in cases involving

political and military decisions, citing cases involving the U.S. military and implicating decisions

textually committed to the executive. *El-Shifa Pharmaceutical Ind. Co. v. U.S.* , 402 F. Supp. 2d

267 (D.D.C. 2005) (U.S. government's decision to bomb Sudanese pharmaceutical plant

textually committed to executive and would intrude on executive's war powers);  *Aktepe v. US*,

105 F.3d 1400, 1404 (11th Cir. 1997) (holding that authority was textually committed to the

executive to manage its relationships with its allies and training U.S. forces in negligence claim

against U.S. on behalf Turkish sailors injured during NATO exercise); *Holtzman v. Schlesinger*,

484 F.2d 1307 (2d Cir. 1973) (balance of powers concerns overriding where Congressperson sought declaratory judgment about whether there was Congressional authority to conduct military activity in Cambodia and injunctive relief prohibiting those activities); *DaCosta v. Laird*, 471 F.2d 1146 (2d Cir. 1973) (same concerns where Congressperson challenged legality of President's escalation of Vietnam War).

However, U.S. courts have adjudicated claims arising in the context of U.S. military operations when they are not constitutionally committed to the Executive, even with regards to habeas petitions or injunctive claims.  *See*, *Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdi v. Rumsfeld*, 542 U.S. 507, 534 (2004) (finding that "[t]he Constitution's allocation of war powers to the President and Congress does not exclude the courts from every dispute that can arguably be connected to 'combat'" or from reviewing "military decision-making in connection with an ongoing conflict"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952) (judicial rejection of executive's claimed powers to seize steel mills during the Korean War); *New York Times Co. v. U.S.*, 403 U.S. 713 (1971) (rejecting foreign relations objections to publication of the Pentagon Papers); *Brown v. U.S.*, 12 U.S. (8 Cranch) 110 (1814) (rejecting executive power to seize domestic property of enemy alien during War of 1812).

U.S. courts have often adjudicated damage claims arising in the context of U.S. military operations.  *See e.g., The Paquete Habana*, 175 U.S. 677 (1900) (reviewing the seizure of two Spanish ships by U.S. forces during Spanish American War); *Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992) (holding that "federal courts are capable of reviewing military decisions, particularly when those decisions cause injury to civilians" where heirs of passengers of Iranian civilian aircraft shot down by the U.S. military during the Iran-Iraq war sued U.S.); *In re Agent Orange*, 373 F. Supp. 2d 64 (political question did not bar claims against U.S.

corporations that manufactured and supplied herbicides to the U.S. and South Vietnam governments and that directly implicated military decisions); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 16 (D.D.C. 2005) (no political question for torture and war crimes claims against U.S. military contractors); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1511-15 (D.C. Cir. 1984), *vacated,* 471 U.S. 1113 (1985), *dismissed on other grounds*, 788 F.2d 762 (D.C. Cir. 1986) (U.S. military's construction and operation of training camp on plaintiff's property in Honduras did not present political question).

Courts have also refused to dismiss on political question grounds even when the claims arise during ongoing wars. *See, e.g., Ibrahim*, 391 F. Supp. 2d at 17; (Iraq); *Kadic,* 70 F.3d at 249-250 (former Yugoslavia); *Presbyterian Church*, 244 F. Supp. 2d at 347 (Sudan civil war). Courts have also heard ATS claims where the litigation had the potential to embarrass the U.S. and its allies. *See*, *Linder v. Portocarrero,* 963 F.2d 332, 337 (11th Cir. 1992) (complaint for the killing of a civilian by the Nicaraguan contras justiciable since it "challenges neither the legitimacy of the United States foreign policy toward the contras, nor does it require the court to pronounce who was right and who was wrong in the Nicaraguan civil war"); *Todd v. Panjaitan*, No. 92-12255, 1994 WL 827111 (D. Mass. Oct. 26, 1994) (judgment against Indonesian general for massacre in East Timor); *Xuncax*, 886 F. Supp 162 (judgment against Guatemalan general for murder, kidnapping, and torture). U.S. courts, then, have been willing to adjudicate claims involving foreign military decisions, and this is consistent with ATS jurisprudence, as claims for genocide, crimes against humanity, and war crimes – all recognized under that statute – generally do not occur in the absence of some sort of military operation.

C. **The Defendant Has Failed to Show that Any of the *Baker v. Carr* Factors Are Present.**

*Baker* lists six factors which can give rise to a political question if they are "inextricable"

from the case. 369 U.S. at 217.  The burden is on the party invoking the political question

doctrine to demonstrate that at least one of the *Baker* factors is present.  *Id.*  Here, defendant does

not bear his burden of proving that any *Baker* factor would render this case nonjusticiable.

Considering these factors in turn, it is clear that dismissal is not warranted.

1.    **There is a clear textual commitment of this issue to the judicial branch.**

Congress passed the ATS and TVPA, both of which reflect an affirmative policy that

fundamental human rights abuses occurring abroad should be heard in U.S. courts.  As such,

ATS and TVPA claims are textually committed to the judiciary. *Klinghoffer*, 937 F.2d at 49

("The department to whom this [tort] issue has been 'constitutionally committed' is none other

than our own -- the Judiciary"), *cited in Kadic*, 70 F.3d at 249; *Presbyterian Church*, 244 F.

Supp. 2d at 346-48; *Wiwa v. Royal Dutch Petroleum*, 226 F.3d 88, 103-04 (2d Cir. 2000).

Where the liability is created by a federal statute such as the TVPA, courts have an obligation to

hear the dispute even where the claims have "significant political overtones." *See e.g., Tel-Oren*

*v. Libyan Arab Republic*, 726 F.2d 774, 790, 797 (D.C. Cir. 1984) (Edwards, J., concurring) ("As

best we can tell, the aim of section 1350 was to place in federal court actions potentially

implicating foreign affairs...Indeed, the Supreme Court has at least twice cited section 1350 as a

statutory example of congressional intent to make questions likely to affect foreign relations.").

2.    **There are judicially discoverable and manageable standards for resolving the**
      **issues in this case.**

*Kadic* made clear that claims under the ATS based on universally recognized norms of

international law – at issue here – provide judicially discoverable and manageable standards:

> [O]ur decision in *Filartiga* established that universally recognized norms of
> international law provide judicially discoverable and manageable standards for
> adjudicating suits brought under the Alien Tort Act, which obviates any need to
> make initial policy decisions of the kind normally reserved for nonjudicial
> discretion.  Moreover, the existence of judicially discoverable and manageable

20

standards further undermines the claim that such suits relate to matters that are
constitutionally committed to another branch.

70 F.3d at 249.  *See also, Presbyterian Church*, 244 F. Supp. 2d at 347-49 ("Contrary to

Talisman's assertions, the issues in this case are not political. The Court's function is to

determine whether Sudan and Talisman violated international law by committing certain

acts.  The standards of behavior under international law are judicially-ascertainable");

*Republic of Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988), *cert. denied,* 490

U.S. 1035 (1989); *In re Agent Orange,* 373 F. Supp. 2d at 67.  Standards of liability for

international torts turn on "familiar questions of responsibility for personal and property

injuries," and should not be avoided because the case takes place in an international

context. *Klinghoffer,* 739 F. Supp. at 860.

> **3.    It is possible to decide this case without an initial policy determination of a
> kind clearly for nonjudicial discretion.**

A finding that defendant, in participating in the decision to bomb the apartment building

in Al-Daraj, violated the law of nations requires a determination of fact and law, not of policy.

*See, e.g., In re Agent Orange*, 373 F. Supp. 2d at 71 (even a determination of the President's

conduct during war "is one of substantive international law, not policy"); *see, e.g., Presbyterian

Church*, 244 F. Supp. 2d at 346.

> **4.    It is possible for the Court to independently resolve this case without coming
> into conflict with the other branches of government.**

Factors four, five, and six are only relevant if contradiction of a prior political branch

decision would "seriously interfere with important governmental interests." *Kadic*, 70 F.3d at

249; *see Presbyterian Church*, 244 F. Supp. 2d at 346-349  Given that the executive branch has

already condemned the bombing at issue (Complaint ¶ 3), adjudication of this matter could not

exhibit a lack of respect for the political branches.  Except to the extent that the executive has

already condemned the conduct alleged, no prior political decisions are even implicated by this case. *See*, *e.g.*, *Klinghoffer*, 937 F.2d at 50; *In re Agent Orange*, 373 F. Supp. 2d at 72 (declining to apply the fifth *Baker* factor where "the Executive and the Legislature have not made significant political decisions in the area being trod on by the instant parties"). The sixth factor is not called into play in the absence of some contrary executive or legislative pronouncement, which does not exist here. *Id.*

## V.    THE ACT OF STATE DOCTRINE DOES NOT BAR PLAINTIFFS' CLAIMS.

### A.  Defendant Has Not and Cannot Meet His Burden to Prove an Act of State.

On a 12(b)(6) motion to dismiss, the availability of the Act of State Doctrine (ASD) defense "must be made on the basis of the pleadings alone." *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 754 (S.D.N.Y. 2004); *accord, Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Defendant bears the burden of proving that the Act of State Doctrine (ASD) applies. *See Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 691, 695 (1976); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 453 (2d Cir. 2000). The ASD only applies if 1) there is an "act of state" at issue *and* 2) barring adjudication is found to be appropriate. *See, e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964). Defendant has failed to establish either, so his motion must be denied.

### B.  Defendant Has Failed to Prove that the Validity of an Official "Act of State" Within Sovereign Territory Is at Issue.

Defendant argues that the ASD mandates dismissal without even identifying the "Supreme Court's classic statement of this principle." *Bigio*, 239 F.3d at 451. "Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done *within its own territory*." *Underhill v. Hernandez,* 168 U.S. 250, 252 (1897) (emphasis added); *see also,*

*Sabbatino,* 376 U.S. at 401.  Defendant failed to prove (or even argue) that the act at issue was in fact an "act of state": an act 1) done within Israel's own sovereign territory that was 2) an official public act.  *See, e.g., id.* at 401.

      **1.   The Act of State Doctrine does not apply because the act alleged occurred outside of Israel's sovereign territory.**

The ASD does not apply to acts outside of a sovereign's territory. *See Underhill*, 168 U.S. at 252; *Sabbatino,* 376 U.S. at 401; *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 405 (1990); *Republic of Aus. v. Altmann*, 541 U.S. 677, 700 (2004); *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 520-22 (2d Cir. 1985) (ASD inapplicable since property taken was outside sovereign's territory); *Giffen*, 326 F. Supp. 2d 497, 503 (S.D.N.Y. 2004) ("Because these transactions were dehors the geographic boundaries of Kazakhstan and involved transactions among foreign corporations, the act of state doctrine does not prohibit this Court from ruling on their legality") (Pauley, J.); *accord, Stroganoff v. Weldon*, 420 F. Supp. 18, 21-22 (S.D.N.Y. 1976) (ASD applied because summary judgment record showed works of art were seized by Russia within its territory, although sold in Berlin); *see also, F. Palicio y Compania, S. A. v. Brush*, 256 F. Supp. 481, 489 (S.D.N.Y. 1966), *aff'd,* 375 F.2d 1011 (2d Cir. 1967), *cert. denied,* 389 U.S. 830 (1967) (ASD applies to expropriation of "property of its *own citizens within its own boundaries*") (emphasis added).

The ASD does not apply to acts in an occupied territory, as it is not within the state's sovereign territory. *See, e.g., State of the Netherlands*, 99 F. Supp. at 667 (ASD "has never been applied to official conduct of an enemy nation in territory beyond its boundaries under its temporary wartime military occupation"); *Kalmich v. Bruno*, 450 F. Supp. 227, 229 n. 2 (N.D. Ill. 1978) (ASD "only applies to acts of a sovereign in its own territorial jurisdiction and not to acts of a belligerent force, during wartime, occupying the territory of an enemy nation").

The act Plaintiffs complain of occurred in the Occupied Palestinian Territory, which is *outside* of Israel's territory. (Complaint at ¶¶ 1, 16.)  Evidence would confirm that both Israel and the U.S. have consistently acknowledged that the OPT is *not* part of the sovereign territory of Israel.[14]  Defendant does not dispute this fact, but instead argues that whether Gaza is outside Israel's borders is a political question. (Memo. at 24, n.18.)  Defendant has therefore conceded that he cannot meet his burden to establish this element of the ASD defense.

The two cases cited by Defendant in a footnote erroneously applied the ASD to Israel's acts in the OPT. (Memo. at 24, n. 18.) The court in *Doe v. Israel*, faced with "alleged human rights violations [that] occurred in the West Bank or on Israeli soil" found that whether the acts occurred within the borders of Israel raised a political question and therefore erroneously applied the ASD in failing to place the burden of proof on defendants. 400 F. Supp. 2d at 97; *Id.* at 114, n.6.  The court in *Corrie* erroneously applied the ASD to acts outside Israel's territory without any analysis of the issue. 403 F. Supp. 2d at 1032.  Furthermore, because these two courts first held they did not have jurisdiction over the plaintiffs' claims, the act of state discussions were dicta which ought to be disregarded. *See, e.g., Cayuga Indian Nation v. Cuomo*, 758 F. Supp. 107, 113 (N.D.N.Y. 1991), *rev'd on other grounds*, 413 F.3d 266 (2d Cir. 2005).  Finally, Defendant's argument that he has satisfied the requirement that the act occur within Israel because he acted in Jerusalem and Tel Aviv is not supported by case law or the record. *See, e.g., Risk v. Kingdom of Norway*, 707 F. Supp. 1159, 1168 (N.D. Cal. 1989), *aff'd*, 936 F. 2d 393 (9th

---

[14] *See Second Period Report of Israel,* U.N. GAOR Hum Rts. Comm, 78th Sess., 2116th-2118th mtgs. at 8., U.N. Doc. CCPR/C/ISR/2001/2 (2001) ("Israel has consistently maintained that the Covenant does not apply to areas that are not subject to its sovereign territory and jurisdiction," *i.e.,* the West Bank and the Gaza Strip); Dep't of State, Country Reports on Human Rights Practices 1991: Report Submitted to the Comm. of Foreign Affairs, House of Representatives and the Committee on Foreign Relations, 102-440 (2d Sess. 1992) ("'the occupied territories'… were occupied by Israel in 1967 and have been under military occupation since then…Israel is not recognized internationally to have sovereignty over any of the occupied territories").

Cir. 1991) (ASD does not apply to Norwegian officials' acts inside the U.S. even though

approved by officials in Norway).

> **2. The Act of State Doctrine does not bar plaintiffs' claims because defendant failed to establish an "official" act of state.**

Defendant failed to provide evidence of a "statute, decree, order, or resolution" of the

Israeli Government authorizing the attack on Plaintiffs resulting in their injuries and the deaths of

their loved ones. *Dunhill*, 425 U.S at 695; *Sharon*, 599 F. Supp. at 544; *Liu v. Republic of China*,

892 F.2d 1419, 1432 (9th Cir. 1989) (ASD burden requires "some evidence that the government

acted in its sovereign capacity…"); *Galu v. SwissAir*, 873 F.2d 650, 654 (2d Cir. 1989)

(defendant bears the burden "to establish foreign law to the extent necessary to establish its

entitlement to the act of state defense.").  Defendant never argues that the attack that killed eight

children and seven adults was legal under Israeli law and provides no admissible evidence that

his conduct "constituted official acts" of Israel. *See, e.g., Giffen*, 326 F. Supp. 2d at 503.

It is insufficient for Defendant to argue without evidence that the "acts" in question were

"authorized, ratified, and reflective of official government policy." (Memo. at 25.)  A purported

letter from the Ambassador of Israel asserting that the case challenges sovereign actions

approved by Israel does not constitute evidence of such. (*See* Plaintiffs' Objection to Defendant's

Submissions filed simultaneously herewith.)  Nor does an on-line statement attributed to then-

Prime Minister Sharon that the action was a "major" success constitute the requisite "statute,

decree, order, or resolution"; moreover, his statement was prefaced with, "Israel has no interest

in harming civilians and it is always regrettable if civilians are hit."[15]  As a result of the findings

of the Inquiry cited by Defendant, according to the IDF spokesperson, "conclusions were drawn

---

[15]Israeli Ministry of Foreign Affairs, Statement by Prime Minister Sharon, July 23, 2002, at www.mfa.gov.il/MFA/Government/Communiques/2002/Statement%20by%20PM%20Sharon%20-%20July%2023-%202002.  (Memo. at 25, 12, n.8.)

with important implications for future operations, to avoid a recurrence of such a case in the future."[16]  The attack at issue can hardly be considered authorized when the Prime Minister called the killing of civilians regrettable and contrary to Israel's interest, and a governmental inquiry drew conclusions to avoid recurrence of the act.

Even if Defendant had presented evidence of an official Israeli act authorizing the bombing at issue, the ASD would still not apply because war crimes, extrajudicial killings, and CIDTP can *never* be considered official acts of state.  "[*J*]*us cogens* violations are considered violations of peremptory norms, from which no derogation is permitted. Acts of state to the contrary are invalid." *Presbyterian Church,* 244 F.Supp.2d at 345.  The Second Circuit has confirmed, "we doubt that the acts of even a state official, taken in violation of a nation's fundamental law and wholly unratified by that nation's government, could properly be characterized as an act of state." *Kadic,* 70 F.3d at 250; *accord, Filartiga v. Pena-Irala*, 630 F.2d 876, 889 (2d Cir. 1980).  *See also, Linder,* 963 F.2d at 337 (only "acts of legitimate warfare" are exempt from liability [under] *Underhill*); *Sarei v. Rio Tinto Plc,* 221 F. Supp. 2d 1116, 1189 (C.D. Cal. 2002) (9th Cir. argued June 23, 2005) (war crimes cannot be deemed official acts of state because they are not legitimate acts of warfare).

Moreover, acts outside an official's scope of authority cannot be acts of state because they cannot "give effect to a State's public interests." *Sharon*, 599 F. Supp. at 544 (*citing Restatement (Second) of Foreign Relations Law* § 41 (1962)).  Violations of international human rights, such as war crimes, extrajudicial killings, and CIDTP, cannot be in the public interest. *See Liu Qi*, 349 F. Supp. 2d at 1306; *Doe v. Unocal Corp.,* 963 F. Supp. 880, 893 (C.D. Cal. 1997).

---

[16] Israeli Ministry of Foreign Affairs, Communicated by the IDF Spokesperson, Findings of the inquiry into the death of Salah Shehadeh, Aug. 2, 2002, at www.mfa.gov.il/MFA/Government/Communiques/2002/Findings+of+the+inquiry+into+the+death+of+Salah+Sh.htm, cited by Defendant. Memo. at 25, 12, n.8.  Defendant cites the IDF Spokesperson's statement, not the actual findings, which have not been provided.

Indeed, "it would be a rare case in which the act of state doctrine precluded suit under" the ATS. *Kadic,* 70 F.3d at 250.  The TVPA's legislative history makes clear that since "no state officially condones torture or extrajudicial killings," the ASD cannot shield defendants from TVPA liability. S. Rep. No. 102-249, at 6 (1991).

Defendant unpersuasively cites *Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1078-1080 (C.D. Cal. 1999), which held only that the ASD barred a soldier from challenging an order by his superior officer to work without pay - an order that did not conflict with Burmese law, international law, or U.S. law.  The *Roe* court expressly refused to reconsider its holding in *National Coalition Gov't of Union of Burma* (*NCGUB*), 176 F.R.D. 329 (C.D. Cal. 1997) that abuses by the Burmese military were not acts of state. *Roe*, 70 F. Supp. 2d at 1076, n. 1 (*citing NCGUB*, 176 F.R.D. at 349-57).  Like the conduct at issue in *NCGUB,* the act at issue here was illegal under international law, domestic law, and as argued herein, U.S. law. (*See* Cassese Dec. at ¶¶ 8-30 and *supra* at II.B.2., discussing Israeli law.  Defendant's reliance on *Saltany v. Reagan*, 702 F. Supp. 319 (D.D.C. 1988) is also misplaced, as the claims against the United Kingdom *itself* were dismissed on act of state grounds because plaintiffs *alleged* that Prime Minister Thatcher, acting as the *sitting head* of government, "speaking from its seat of government," (*not* outside the scope of authority) assented to a U.S. request to use air bases *in* its territory (Great Britain) to conduct a military mission. *Id.* at 320-321.

### 3. The Act of State Doctrine does not bar plaintiffs' claims because they do not require the Court to declare an official act invalid.

Finally, even if Defendant could provide evidence of an act that is a "statute, decree, order, or resolution," Plaintiffs' claims do not invoke the ASD as they do not require the Court to declare the act *invalid. See, e.g., Sabbatino*, 376 U.S. at 401. In *W. S. Kirkpatrick*, the Supreme Court rejected the ASD since plaintiff "was not trying to undo or disregard the governmental

action", 493 U.S. at 407. This case does not seek to deny legal effect to any act of a foreign

government, nor render it "null and void." *Id.* at 406 (citing *Sabbatino*). *W. S. Kirkpatrick* cited

with approval the court's finding in *Sharon* that the "issue in this litigation is not whether [the

alleged] acts are valid, but whether they occurred". 599 F. Supp. at 546. *Sharon* rejected the

ASD because the issue was not whether acts condoning the massacre of unarmed noncombatant

civilians were *valid*: "no one is suggesting that these acts…have validity in the sense that they

cannot be attacked. All agree…such actions, if they occurred, would be illegal and abhorrent."

*Id*. Plaintiffs seek damages for the injuries they sustained and the killings of their relatives; they

do not seek to undo any act that has been done – unfortunately they cannot.

**C.  Even if an Act of State Were at Issue, the *Sabbatino* Factors Would Counsel Against Application of the Doctrine.**

Ignoring the first issue of whether the conduct was "an act of state", Defendant relies on

the factors set forth in *Sabbatino* that a court must consider to determine whether adjudication of

an act of state should be permitted; such factors, however, cannot transform an unofficial act or

an act outside a sovereign's territory into an "act of state." *See W. S. Kirkpatrick,* 493 U.S. at 405

(inquiries unnecessary where "the factual predicate for application of the act of state doctrine

does not exist). If an act of state were at issue, the factors support adjudication.

**1.  There is a high degree of international consensus concerning applicable legal principles.**

The first *Sabbatino* factor, the degree of international consensus concerning applicable

legal principles, counsels against application of the ASD in this case. *Sabbatino*, 376 U.S. at 427-

28. Plaintiffs' ATS claims, which must be based on specific, universal and obligatory norms, by

definition, have a high degree of international consensus. *See Sosa*, 542 U.S. at 748; *see also,*

*Kadic*, 70 F.3d at 250 (unambiguous agreement regarding war crimes and summary execution

principles); *Unocal Corp.,* 963 F. Supp. at 894-95 (*jus cogens* violations); *Qi*, 349 F. Supp. at

1296 (CIDTP); *Liu*, 892 F.2d at 1433 (murder). The ASD should not be applied here given that

CIL norms have the utmost degree of international consensus.

**2.    Any foreign relations implications are alleviated because the U.S. government has condemned the human rights violation at issue.**

The second *Sabbatino* factor relates to the "implications of an issue…for our foreign

relations", and also weighs against application of the ASD. 376 U.S. at 428.  U.S. foreign

relations cannot be implicated where, as here, the Executive Branch has condemned Israel for the

very act at issue.  *See, e.g., Presbyterian Church,* 244 F. Supp. 2d at 346 (rejecting ASD given

U.S. government's condemnation of Sudan's human rights violations, noting that complex

diplomatic relationships do "not militate in favor of dismissal").  The State Department and the

White House have condemned the deliberate attack on civilians at issue here. (Complaint at ¶ 3.)

Where the political branches "have already denounced the foreign state's human rights abuses, it

is hard to imagine how judicial consideration of the matter will so substantially exacerbate

relations as to cause 'hostile confrontation'", as required to invoke the ASD. *Unocal*, 963 F.

Supp. at 893; *see also, Marcos*, 862 F.2d at 1360. Even if this case could have implications on

foreign relations, a court should not use the ASD to refuse to apply established principles of

human rights.

> A consideration of such questions as the massacre of unarmed civilians no doubt
> touches "on national nerves," *Sabbatino,* 376 U.S. at 428*,* and raises the
> possibility of embarrassment to the United States and Israel. This case, of course,
> does not entail judicial scrutiny of the legitimacy of such acts. But even if it did, a
> court should not refuse to apply established principles of human rights because of
> a doctrine designed to keep courts out of the business of enforcing property rights
> in litigation affecting property within a foreign sovereign state. To the contrary,
> *Sabbatino* suggests -- and the most current authority proposes -- that the act of
> state doctrine need not be applied to bar review of the violation of well recognized
> human rights.

29

*Sharon,* 599 F. Supp. at 552. Defendant does not explain how, much less produce evidence that, adjudicating this case would detrimentally affect U.S. foreign relations, especially given that the precise act at issue has been condemned by the U.S. Government. Hailing from an ally of the United States does not exempt a former government official from liability for war crimes and other human rights violations.

### D. Defendant Need Not Have Ordered the Bombing to Be Held Liable.

Contrary to Defendant's command responsibility argument, (Memo. at 27), the TVPA Senate Report makes clear that "a higher official need *not* have personally performed or ordered the abuses in order to be held liable." S. Rep. No. 102-249, at 9 (1st Sess. 1991) (emphasis added). Cases cited by Defendant confirm that a superior is responsible for failing to prevent or punish a subordinate's actions of which the superior knew or should have known. *See, e.g., Hilao,* 103 F.3d at 777; *Ford ex rel. Estate of Ford v. Garcia,* 289 F.3d 1283, 1288 (11th Cir. 2002); *accord, In re Yamashita,* 327 U.S. 1, 16 (1946). Finally, Defendant's argument that Plaintiffs' future discovery will invade Israel's sovereignty is speculative and premature. (Memo. at 27.) In *Ibrahim,* the court rejected speculation at the motion to dismiss stage about future clashes with the U.S.'s need for secrecy. 391 F.Supp.2d at 16.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied, and that if necessary, they be allowed the opportunity to conduct jurisdictional discovery.

Dated: April 26, 2006                                  Respectfully submitted,

                                                       MARIA C. LAHOOD (ML-1438)
                                                       *Attorneys for Plaintiffs*